# Exhibit 10

FD-302 (Rev. 5-8-10)  -1 of 5-   **OFFICIAL RECORD**

UNCLASSIFIED//FOUO

# FEDERAL BUREAU OF INVESTIGATION

Date of entry   02/09/2017

On January 20, 2017, Honolulu Police Department (HPD) Deputy Chief JERRY INOUYE, HPD Acting Deputy Chief WILLIAM AXT and HPD Accountant 5 ARAYA HACHAI (Protect Identities) were interviewed by Federal Bureau of Investigation (FBI) Special Agents (SAs) Nicole Vallieres and Darrin Sakanoi at the District of Hawaii United States Attorney's Office (USAO), 300 Ala Moana Boulevard, Honolulu, Hawaii 96850. Also present during the interview was Assistant United States Attorney (AUSA) Lawrence Tong. After being advised of the nature of the interview, AXT, INOUYE and HACHAI provided the following information:

AXT advised that he started his employment with HPD in October 1990. In June 2012, as a Captain, he was assigned to HPD's Finance Division as the Executive Fiscal Officer. In February 2013, he was promoted to the rank of Major and became the Fiscal Officer for the Finance Division. In August 2015, he was promoted to Assistant Chief where he was in charge of overseeing the Finance Division. AXT replaced Assistant Chief Alan Bloomberg (phonetic) and Mark Nakagawa was the Assistant Chief who was replaced by Bloomberg.

AXT advised that the HPD "Provisional" account (subsequently identified by HACHAI as the "Provision for Vacant Positions (PVP)") can only be utilized for regular salaries of civilian HPD personnel.

AXT stated that Honolulu Charter Laws and Revised Ordinances clearly defined a "Settlement" as the responsibility of the Honolulu Corporation Counsel.

AXT advised that initially, the local news reported that the Honolulu Police Commission (HPC) met with HPD Chief Louis Kealoha's attorney to discuss a severance package for Kealoha. None of HPD's personnel were included in this meeting or invited to this meeting. The news also stated that the severance package included a payment of several hundred thousand dollars to Kealoha that would come out of HPD's budget. AXT told HPD Acting Chief Cary Okimoto that the proposed severance/settlement payment would be a big hit to HPD, they could not absorb it, and it should come out of the Honolulu Corporation Counsel's budget. AXT told the interviewing Agents that the HPD Chief's Office was attached to a budget/financial group in the

UNCLASSIFIED//FOUO

estigation on  01/20/2017  at  Kapolei, Hawaii, United States (In Person)

File #  194B-HN-2124834                                                      Date drafted  01/25/2017

by  Darrin Sakanoi, Nicole Vallieres

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 05-08-10)

UNCLASSIFIED//FOUO

194B-HN-2124834

Continuation of FD-302 of  (U//FOUO) Interview with HPD Executive Management and Araya Hachai  , On  01/20/2017 , Page  2 of 5

organization which had a limited budget and there was no way HPD could afford to pay for the respective settlement.

AXT stated that on January 10, 2017, he, Okimoto and INOUYE met with HPC Chair Max Sword. AXT advised that this was the first day that Sword informed the Honolulu City Council of the proposed settlement for the Chief and could not say anything to HPD. Sword was shocked when AXT, Okimoto and INOUYE told Sword that HPD could not pay for Chief Kealoha's settlement.

AXT advised that on January 11, 2017, Honolulu Corporation Counsel DONNA LEONG called HPD wanting to set up a meeting. On that same date, LEONG and Honolulu Deputy Corporation Counsel Duane Pang met with Okimoto, INOUYE, AXT and HPD Senior Legal Advisor Lynne Uyema at HPD's Main Station in Honolulu. LEONG told them she was working on a highly confidential agreement with regard to Chief Louis Kealoha and could not provide any specifics, ███████████████████████████████████████████ ███████████████████████████████████████████ AXT told interviewers present that per the Revised Ordinances of Honolulu (ROH), Chapter 2, Section 2, HPD cannot move in excess of $100,000 to an activity or 10% of the amount appropriated to that activity without approval from the Honolulu City Council. AXT also told LEONG that HPC's agreement to pay the Chief is a "settlement" (requiring Honolulu City Council approval). ███████████████████████ ███████ While LEONG and Okimoto were in a private discussion, AXT, INOUYE, Uyema and Pang were waiting together. ███████████████████ ███████████████ INOUYE advised that he heard this and was a witness to this conversation.

AXT advised that he told Okimoto of his concerns detailed above and was concerned that the Chief's Office Salary within HPD's budget is small and the proposed settlement amount does not fit there.

AXT stated that he believed even the drafting and approving of HPC's retirement agreement with Kealoha without it being taken to the Honolulu City Council for approval, was a violation of the ROH.

HACHAI and AXT stated that HPD's organizational structure is broken down by "Bureaus." The "Office of the Chief of Police" and "Police Commission" are considered Bureaus. However, from a finance perspective, the Office of the Chief of Police is not a Bureau, but is considered an "Activity." Each Activity has a budget. Bureaus for the most part, mirror Activities, except for Patrol which consists of several Bureaus, but are

UNCLASSIFIED//FOUO

FD-302a (Rev. 05-08-10)

UNCLASSIFIED//FOUO

194B-HN-2124834

Continuation of FD-302 of  (U//FOUO) Interview with HPD Executive Management and Araya Hachai  , On  01/20/2017  , Page  3 of 5

combined as one Activity for finance purposes. HACHAI advised that ROH Chapter 2, Article 17, Section 2-17.2 (c)(1) stated that Honolulu City Council approval is required when there are transfers over $100,000 between Activities. HACHAI advised that currently all monies are accounted for with respect to HPD's budget. The ROH Chapter 2 was provided previously by AXT and will be maintained in the 1A section of this case file.

HACHAI advised that if it was legal for HPD to pay the Chief's settlement, HPD would have to go through the following steps:

- HPD would generate a Memorandum to the Honolulu Department of Budget and Fiscal Services (BFS) requesting the respective funding.
- BFS would approve the funding amount and send the request for funding to the Honolulu City Council. This process would take approximately a month, not just 14 days.

AXT stated if HPD were moving funds between Activities, HPD would have to inform the Honolulu City Council. HPD would have to identify which funds they are moving and why they need to move the respective funds. HPD would also have to explain what they are not going to purchase in order to free up and move the respective funds. The Honolulu Managing Director (known by the FBI to be Roy Amemiya, Jr.) would be informed of this first and subsequently a resolution would need to be filed with the Honolulu City Council. The resolution would go before the City Council's Budget Committee who would hear the resolution and vote on it. If it was passed by the Budget Committee, the resolution would be placed on the City Council's agenda for a full council approval. This would entail a public hearing. The entire process would take approximately 60 days.

AXT advised that based on the HPC's retirement agreement with Kealoha dated January 18, 2017, $190,000 of the $250,000 total payment is purportedly salary and the remaining $60,000 is for fees. If the $190,000 is defined as salary, it will go toward Kealoha's "high three" retirement computation. This amount will boost Kealoha's monthly pension payout for life. AXT stated that based on an ERS (Hawaii State Employees Retirement System) calculation, the additional $190,000 of purported salary will increase Kealoha's overall salary for his last year to approximately $360,000. AXT estimates Kealoha's average of his high three salary to be $210,000 and his pension payout would be 86% of that amount per year. The obligation of Kealoha's retirement payout will come from the State ERS. AXT advised there is a State provision whereby, if it is known that an employee is trying to boost his/her's last year's salary, such as by heavy increases in overtime, it could be deemed a "spike." If the State deems it a "spike," the portion of the employee's retirement payout that is increased, due to

UNCLASSIFIED//FOUO

FD-302a (Rev. 05-08-10)

UNCLASSIFIED//FOUO

194B-HN-2124834

Continuation of FD-302 of (U//FOUO) Interview with HPD Executive Management and Araya Hachai , On 01/20/2017 , Page 4 of 5

the spike, is paid for by the City. The respective agreement between HPC and Kealoha will be maintained in the 1A section of this case file.

AXT was asked by interviewing Agents if "Severance" meant "Settlement" with regard to the Severance of $190,000 Kealoha was to receive as stated in the HPC retirement agreement for Kealoha. AXT replied that he could not find anything in any of HPD's documents covering the term "Severance."

AXT stated that a "lump sum" amount of $250,000 to be paid to Kealoha, per HPC's retirement agreement for Kealoha, does not make sense as a lump sum payment that HPD would normally pay for, would include accrued sick leave and compensatory time. An agreement reached with regard to a retirement or termination is considered a settlement or separation which the Honolulu Corporation Counsel is responsible for paying. AXT also advised that the Kealoha's retirement agreement states that $60,000 of the $250,000 is for "fees, costs and expenses." Reimbursements for fees, costs and expenses would not be considered part of salary.

AXT stated during the first telephone call between LEONG and Okimoto (on January 12, 2017), LEONG told Okimoto 

HACHAI advised that HPD can only obtain money from the Provisional account for regular payment to civilian employees. With regard to the Provisional account, HPD would work together with BFS to obtain funds from this account. Initially, to obtain funding from the Provisional account, HPD has to provide a justification form to BFS. The justification form would document the number and type of civilian employees filling "authorized" vacant positions and the total payment needed to be transferred to these employees' respective regular payment account. The justification form would be sent to the Honolulu City Council for notification purposes. BFS would then approve and inform HPD's finance department. HACHAI and AXT acknowledged that if they were to follow LEONG's instructions 

AXT and HACHAI referred to a Memorandum from the City and County of

UNCLASSIFIED//FOUO

FD-302a (Rev. 05-08-10)

UNCLASSIFIED//FOUO

194B-HN-2124834

Continuation of FD-302 of (U//FOUO) Interview with HPD Executive Management and Araya Hachai, On 01/20/2017, Page 5 of 5

Honolulu dated July 05, 2016 from Nelson H. Koyanagi, Director of BFS to all City Executive Agencies regarding "Operating Budget Execution Guidelines and Expenditure Schedule Instructions for Fiscal Year 2017 (Addendum)." The Memorandum was signed and approved by Honolulu Managing Director Roy K. Amemiya, Jr. and Mayor Kirk Caldwell. AXT and HACHAI stated that this memo defined the "Provision for Vacant Positions (PVP)" account and process of procuring funds from it. HACHAI provided the respective document which will be maintained in the 1A section of this case file.

AXT and HACHAI referred to a Memorandum from the City and County of Honolulu dated July 05, 2016 from Nelson H. Koyanagi, Director of BFS to all City Executive Agencies regarding "Operating Budget Execution Guidelines and Expenditure Schedule Instructions for Fiscal Year 2017." The Memorandum was signed and approved by Honolulu Managing Director Roy K. Amemiya, Jr. and Mayor Kirk Caldwell. AXT and HACHAI advised that this memo stated, "the transfer of funds between quarters shall not be permitted." The respective document was previously provided by AXT and will be maintained in the 1A section of this case file.

AXT stated that he called NELSON KOYANAGI subsequent to OKIMOTO's telephone conversation with LEONG (on January 12, 2016). AXT told KOYANAGI that he had questions ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ AXT told KOYANAGI that the transfer of over $100,000 required Honolulu City Council approval. KOYANAGI did not respond to this.



AXT advised that per the Revised Charter of the City and County of Honolulu, Section 6-1606, the Police Commission, "Except for purposes of inquiry or as otherwise provided in this charter, neither the commission nor its members shall interfere in any way with the administrative affairs of the department." The respective document was previously provided by AXT and will be maintained in the 1A section of this case file.